# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| TERESA CAVALLO, as Executrix of the Estate of Richard Imperatore, <br><br> Plaintiff, <br><br> v. <br><br> HOTEL FINANCE PARTNERS INC., a Colorado foreign corporation, DANIEL LEE RITZ, individually, ZANE D. RUSSELL, individually, <br><br> Defendants. | Civil Action No. 4:24-cv-00884 <br><br> **PLAINTIFF'S SECOND AMENDED COMPLAINT** <br><br><br> (Assigned to Judge Charles Eskridge) |

Teresa Cavallo, Executrix of the Estate of Richard Imperatore, in the above-captioned matter states as follows:

## INTRODUCTION

1.      The shareholders of Hotel Finance Partners Inc., agreed to sell the company's main asset—the Monarch Mountain Lodge (the "Hotel"). Defendants Ritz and Russell were tasked with executing the sale of the Hotel and have repeatedly stymied any attempts to finalize a sale and have otherwise used the Hotel Finance Partners' assets to enrich themselves.

2.      Defendants Ritz and Russell have turned down legitimate and willing buyers and interfered with the contracts to buy. Though they have repeatedly claimed that the Hotel is "under contract," they have refused to provide any information about any offer or potential sale. And any time a closing date approaches, an issue suddenly arises that requires the sale be delayed or cancelled.

3.     Meanwhile, without approval and in violation of their duties, Defendants Ritz and Russell have caused mortgages to be taken against the Hotel for their own personal benefit.

4.     Defendants Ritz and Russell have intentionally refused to provide notice to Ms. Cavallo of corporate actions as required by the alleged by-laws.

5.     Defendants Ritz and Russell have similarly refused to provide statutorily required information about the corporation to its shareholders, preventing Ms. Cavallo from properly administering the Estate of Mr. Imperatore.

6.     All the while enjoying the benefits arising from Mr. Imperatore's financial investment in the corporation, Defendants Ritz and Russell have consistently worked to eliminate any benefits that arise from the Estate's position as a shareholder of the company.

7.     Unwilling to cooperate with the most basic requests for information, Defendants Ritz and Russell have forced the Imperatore Estate to initiate this litigation to gain access to information required to be provided under clear law and to pursue remedies for Ritz and Russell's mismanagement.

8.     Over a year into this litigation, Ms. Cavallo learned for the first time that Defendants (and their counsel) have been lying to her and the Court. In September 2023 (over three months before this litigation began), Defendants entered into an agreement to sell all of the assets of Hotel Finance Partners in a phased transaction. Phase 1 has already closed and 42% of Hotel Finance Partners' assets have been sold to a third party and the proceeds of that sale have been diverted by Defendants Ritz and Russell for their

own personal benefit. Defendants intentionally structured this deal to exclude Cavallo from the benefit and to hide the sale from her.

9.      In violation of Texas law, Defendants never disclosed this transaction or sought approval of the shareholders before entering into this agreement. Instead, Defendants have repeatedly lied. Defendants' counsel has claimed (months after the contract had been entered into) that "[w]hen and if a purchase offer is ready to be considered, it will be presented to the shareholders . . . ." And then Defendants, through counsel, represented to the Court that "no credible" offer to purchase the assets of Hotel Finance Partners had ever been made. Both of those statements were knowingly false when made and were part of a scheme to hide the sale in order to avoid paying Ms. Cavallo the money due to her as a shareholder and otherwise to hide Defendants' financial malfeasance.

## PARTIES

10.     Plaintiff Teresa Cavallo, a resident of New Jersey, is the Executrix of the Estate of Richard Imperatore. Mr. Imperatore passed away on January 24, 2019. Ms. Cavallo was appointed as Executrix on March 12, 2019.

11.     Defendant Hotel Finance Partners Inc. is a Texas corporation with its principal place of business at 22720 West US Hwy 50, Salida, Colorado 81201.

12.     Upon information and belief, Defendant Daniel Lee Ritz is a resident of Texas and the Chief Financial Officer and a director of Hotel Finance Partners Inc.

13.     Upon information and belief, Defendant Zane Russell is a resident of Texas and the President and a director of Hotel Finance Partners Inc.

## JURISDICTION AND VENUE

14.    Jurisdiction is proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

15.    Venue is proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(1). At least one defendant resides in the Southern District of Texas.

## GENERAL ALLEGATIONS

### Background of Monarch Mountain Lodge

16.    The Hotel is located at 22720 West US Hwy 50, Salida, Colorado 81201.

17.    The Hotel was purchased on November 5, 2014, by Inn-Vestors Inc., an investment group from Arkansas.

18.    Upon information and belief, Mr. Ritz and/or Mr. Russell are affiliated or otherwise involved with Inn-Vestors Inc.

19.    When Inn-Vestors Inc. purchased the Hotel, it assumed all liabilities that came with it, including fixing a water filtration system, installing new pumps for the property's wastewater treatment plant, and paying back taxes on the property.

### Formation of Hotel Finance Partners Inc.

20.    Mr. Russell and Mr. Ritz formed Hotel Finance Partners Inc., a Texas corporation, on November 5, 2014.

21.     Hotel Finance Partners purchased the Hotel from Inn-Vestors Inc. on February 6, 2015, for a nominal fee of $10.00.

22.     Mr. Russell and Mr. Ritz are directors and officers of Hotel Finance Partners, with Mr. Russell serving as the President and Mr. Ritz serving as the Chief Financial Officer.

23.     Mr. Imperatore and Michael Jud invested financially in the corporation. In exchange for their financial investment, the company issued shares to Mr. Imperatore and Mr. Jud.

24.     Mr. Imperatore's shares represented his 25% interest in the Hotel and Hotel Finance Partners.

**Attempts to sell Monarch Mountain Lodge**

25.     Upon information and belief, Mr. Imperatore, Mr. Jud, Mr. Ritz, and Mr. Russell agreed to sell the Hotel. As officers of the corporation, Mr. Ritz and Mr. Russell were responsible for executing the shareholders' decision to sell.

26.     The Hotel has been for sale since 2021.

27.     During that time, Mr. Ritz and Mr. Russell have interfered with or otherwise prevented any potential sale.

28.     In January 2022, Mr. Jud informed Ms. Cavallo that there was an offer on the Hotel.

29.     Ms. Cavallo requested a copy of the contract from Mr. Ritz on January 21, 2022.

30.     Mr. Ritz did not respond.

31.    In February 2022, Ms. Cavallo gave Mr. Ritz and Mr. Jud the contact information for Shelly Vincent, a broker with eXp Realty, in an attempt to move along the sale of the Hotel.

32.    Mr. Ritz denied Ms. Vincent access to the Hotel, and she was unable to work as the broker or listing agent.

33.    Upon information and belief, Mr. Ritz's interference with Ms. Vincent, including denying her access to the Hotel, was not done to further the interests of Hotel Finance Partners.

34.    At the same time, Mr. Ritz and Mr. Russell received an offer from another real estate firm, Marcus & Millichap, to list the hotel. Marcus & Millichap indicated a sale price in the low $3 million.

35.    Mr. Ritz and Mr. Russell decided not to work with a listing agent or brokerage firm to avoid paying the brokerage fee.

36.    Mr. Ritz refused to allow any listing agent or broker to visit the Hotel.

**Mr. Ritz and Mr. Russell mortgage the Hotel for their own benefit**

37.    Hotel Finance Partners entered into a deed of trust for the benefit of Gulf Atlantic Bank, a Florida corporation, on May 20, 2022 ("Gulf Atlantic mortgage"). Mr. Ritz signed the deed.

38.    The Gulf Atlantic mortgage reflected a loan in the amount of $1,000,000.00.

39.     The maturity date for the Gulf Atlantic mortgage was initially May 20, 2023. Two amendments have been made since then, extending the maturity date to August 31, 2023, and again to December 1, 2023. Mr. Ritz signed both amendments.

40.     Upon information and belief, the proceeds of the Gulf Atlantic mortgage were not used for the purposes of Hotel Finance Partners or the Hotel. There is no record of nor is there a receipt of the $1,000,000 loan reflected in the balance sheets or income statements produced by Defendants. Upon information and belief, Hotel Finance Partners never received the proceeds from the loan.

41.     Instead, upon information and belief, the proceeds were used to benefit Mr. Ritz and/or Mr. Russell either directly or indirectly through other businesses in which they were involved.

42.     Ms. Cavallo was not informed about the issuance of the Gulf Atlantic mortgage prior to its execution.

43.     Upon information and belief, Mr. Ritz and Mr. Russell did not make full disclosure about the Gulf Atlantic mortgage to the shareholders or to any disinterested directors.

44.     Upon information and belief, there was not a shareholder vote regarding the Gulf Atlantic mortgage.

45.     Upon information and belief, Mr. Ritz and Mr. Russell executed the Gulf Atlantic mortgage for their own benefit or the benefit of an entity in which they have a financial interest.

**Ms. Cavallo identifies a buyer at $3,600,000.00**

46.    In July 2022, Mr. Ritz informed Ms. Cavallo that he had an offer to buy the Hotel for $3,300,000.00.

47.    In September 2022, Ms. Cavallo requested a copy of the contract for Mr. Ritz's potential buyer.

48.    Mr. Ritz did not respond.

49.    In September 2022, Ms. Cavallo received an offer to buy the Hotel for $3,500,000.00. Ms. Cavallo worked with Ginna Stauble, a broker with eXp Realty, to broker the deal with her buyer.

50.    When Ms. Cavallo brought the offer to Mr. Ritz, Mr. Ritz informed her that his buyer had already completed its inspections when this offer came in.

51.    Ms. Cavallo requested from Mr. Ritz and Mr. Russell an update on Mr. Ritz's buyer and a copy of the contract.

52.    Neither Mr. Ritz nor Mr. Russell responded to Ms. Cavallo's request.

53.    The buyer who contacted Ms. Cavallo increased their offer to $3,600,000.00 and a closing date in mid-October 2022.

54.    On September 20, 2022, Hotel Finance Partners accepted that offer and entered into an agreement to sell the Hotel.

55.    Mr. Ritz objected to Ms. Stauble's representation and compensation in the transaction with the buyer. Mr. Ritz refused to cooperate with Ms. Stauble or provide the buyer with relevant information related to the sale.

56.    In December 2022, it became apparent that Mr. Ritz was not performing on the contract or preparing for closing with the buyer.

57.    The contract for sale accidentally had a close date of November 22, 2022, instead of December 22, 2022. When Ms. Stauble realized the error, she proposed a simple amendment to the contract to reflect the closing date actually agreed upon by the parties.

58.    Despite the fact that the incorrect closing date had already passed and all parties had agreed to and were operating under the correct December 22, 2022, closing date, Mr. Ritz abruptly cancelled the sale.

59.    Mr. Ritz cancelled the contract immediately before the Hotel was required to provide its closing disclosure, which would have disclosed the existence of the Gulf Atlantic mortgage.

60.    Mr. Ritz assured Ms. Cavallo that he had several other buyers interested in the Hotel.

61.    Despite Defendants' efforts to hide the Gulf Atlantic mortgage, Ms. Cavallo became aware of the mortgage in December 2022 through Ms. Stauble.

**Mr. Ritz and Mr. Russell take out a second mortgage for their benefit**

62.    On or about May 4, 2023, Hotel Finance Partners entered into a deed of trust for the benefit of 22720 Monarch LLC ("22720 Monarch mortgage"). Mr. Ritz signed the deed.

63.    The 22720 Monarch mortgage reflected a loan in the amount of $650,000.

64.    The maturity date for the 22720 Monarch mortgage was June 4, 2025.

65.    Upon information and belief, the proceeds of the 22720 Monarch mortgage were not used for the purposes of Hotel Finance Partners or the Hotel.

66.    Instead, upon information and belief, the proceeds were used to benefit Mr. Ritz and/or Mr. Russell either directly or indirectly through other businesses in which they were involved.

67.    Upon information and belief, the proceeds from the 22720 Monarch Mortgage were not distributed to Hotel Finance Partners but to other entities owned or controlled by Ritz and/or Russell.

68.    Ms. Cavallo was not informed about the issuance of the 22720 Monarch mortgage prior to their execution.

69.    Upon information and belief, Mr. Ritz and Mr. Russell did not make full disclosure about the 22720 Monarch mortgage to the shareholders or any disinterested directors.

70.    Upon information and belief, there was not a shareholder vote regarding the 22720 Monarch mortgage.

71.    Upon information and belief, Mr. Ritz and Mr. Russell executed the 22720 Monarch mortgage for their own benefit or the benefit of an entity in which they have a financial interest.

72.    Upon information and belief, Mr. Ritz has caused the sale of the Hotel to fall through or be otherwise delayed for improper reasons, including to hide the existence of both the Gulf Atlantic and 22720 Monarch mortgages.

**June 2023 offer**

73.     In June 2023, Mr. Ritz claimed a new offer was made on the Hotel. But when Ms. Cavallo repeatedly inquired about the new closing date, she received no response from Mr. Ritz or Mr. Russell.

74.     Mr. Jud informed Ms. Cavallo that the closing date was August 24, 2023. Ms. Cavallo asked Mr. Ritz and Mr. Russell if the Hotel was on schedule to close on this date. Mr. Russell confirmed that he believed closing was scheduled for the end of August.

75.     There was no closing at the end of August.

76.     Ms. Cavallo continued to request contracts from Mr. Ritz and Mr. Russell related to the potential buyer and sale.

77.     Mr. Ritz and Mr. Russell refused to provide Ms. Cavallo with any paperwork or records outlining how the proceeds from the Hotel sale would be distributed among the owners. They also refused to provide contracts for potential buyers or other records related to the sale of the Hotel.

78.     According to Mr. Ritz, there were two closing dates for the new buyer. Mr. Ritz advised that one closing would take place in September and one on October 30, 2023. He stated that he would request funds as a good faith payment for the closing date in September.

79.     Ms. Cavallo again requested information about the closing, which she never received.

80.     In September 2023, Mr. Jud informed Ms. Cavallo that the buyer released funds in advance of the first closing date. Mr. Ritz, however, denied receiving any funds from the buyer.

81.     Mr. Ritz and Mr. Russell did not respond to Ms. Cavallo's request for a closing statement, if any, related to the September closing.

82.     Ms. Cavallo never received confirmation about whether the September closing actually took place.

83.     On the evening of October 30, 2023, the date of the second closing, Mr. Ritz informed Ms. Cavallo, Mr. Jud, and Mr. Russell that a closing would not be happening in October.

84.     Mr. Ritz explained that he would need to extend the buyer's option for 30 days. Mr. Ritz never provided a new closing date.

85.     On December 12, 2023, Mr. Ritz informed counsel for Ms. Cavallo that the potential buyer from June 2023 had made another offer to purchase the Hotel at $3,800,000.00.

86.     Mr. Ritz informed counsel that the closing date was originally November 30, 2023, but the potential buyer needed more time for financing.

87.     Counsel for Ms. Cavallo requested a contract for the sale and any recent communications with the buyer.

88.     Mr. Ritz did not respond to counsel's request.

89.     On December 15, 2023, Mr. Ritz informed counsel that he would send the contract and addendum for the sale that same day. Mr. Ritz did not do so.

**Ms. Cavallo's requests for financial records related to the Hotel**

90.      On behalf of Mr. Imperatore and as the Executrix of his Estate, Ms. Cavallo has made multiple requests to inspect the corporate records for Hotel Finance Partners.

91.      On March 23, 2022, Ms. Cavallo requested a K-1 document from Mr. Ritz in order to file the Estate's tax returns. Despite his representation that he would pick up the K-1 document that same day, Mr. Ritz never further responded to Ms. Cavallo's request.

92.      On January 27, 2023, Ms. Cavallo requested the financials for the Hotel from 2019–2022. Mr. Ritz and Mr. Russell did not respond.

93.      Ms. Cavallo made four more requests for the K-1 document on March 9, March 29, April 17, and May 1, 2023. Mr. Ritz and Mr. Russell did not respond to any of these requests.

94.      On July 20, 2023, Ms. Cavallo requested the profit and loss statement and general ledger for the Hotel from 2019–2022. Mr. Ritz and Mr. Russell did not respond.

95.      Ms. Cavallo then requested the last six months of bank statements for the Hotel, including copies of checks written on behalf of the Hotel, on August 15 and August 31, 2023. Mr. Ritz and Mr. Russell did not respond to either request.

96.      On September 19, 2023, Ms. Cavallo requested financial statements for the Hotel from 2019–2023 and the last six months of bank statements from Mr. Ritz and Mr. Russell. Mr. Ritz informed Ms. Cavallo that "detailed reconciled statements were included in the tax returns." He attached the 2022 financial statements only.

97.     Ms. Cavallo explained to Mr. Ritz and Mr. Russell that she had not received any tax returns since 2019. Mr. Ritz and Mr. Russell did not respond.

**Hotel Finance Partners does not comply with
Ms. Cavallo's statutory demand to inspect corporate records**

98.     Left with no alternative, Ms. Cavallo made a formal demand to inspect the corporate records for Hotel Finance Partners pursuant to Texas Business Organizations Code § 21.218 and Colorado Revised Statutes §§ 7-116-102, 7-116-105.

99.     Counsel for Ms. Cavallo emailed a written demand to Mr. Ritz and Mr. Russell on November 20, 2023 ("November 20 letter"). Counsel also sent the November 20 letter via certified mail return receipt requested to Hotel Finance Partners registered address, 22720 West US Hwy 50, Salida, Colorado 81201.

100.     Hotel Finance Partners refused to accept the November 20 letter when delivery was attempted on November 27. At Hotel Finance Partners' request, the letter was held at the post office.

101.     Counsel for Ms. Cavallo sent another written demand on December 4, 2023 ("December 4 letter"). Counsel emailed the December 4 letter to Mr. Ritz and Mr. Russell and sent it via certified mail return receipt requested to the Hotel.

102.     Hotel Finance Partners refused to accept delivery of the December 4 letter when delivery was attempted on December 6. At Hotel Finance Partners' request, the letter was held at the post office.

103.    Hotel Finance Partners picked up the November 20 letter from the post office on December 9, 2023. Hotel Finance Partners did not pick up the December 4 letter, which was also at the post office by this date.

104.    Counsel for Ms. Cavallo spoke with Mr. Ritz on December 12, 2023, regarding both letters. Mr. Ritz represented that he would provide any information requested but was tied up with attempting to sell the Hotel. Nonetheless, Mr. Ritz promised to provide information about the current sale contract within a couple of days.

105.    Mr. Ritz did not provide any documents to counsel or Ms. Cavallo. On December 15, 2023, counsel for Ms. Cavallo had another call with Mr. Ritz. This time, Mr. Ritz demanded an explanation for why Ms. Cavallo needed the financial documents. Counsel explained the information was necessary for Ms. Cavallo to properly administer Mr. Imperatore's Estate. Mr. Ritz agreed that he would send the requested documents on or before Monday, December 18.

106.    Mr. Ritz did not send any documents by December 18, 2023.

107.    On December 22, 2023, counsel for Ms. Cavallo spoke with Mr. Ritz again. Despite previously providing an explanation for the statutory request, Mr. Ritz demanded that counsel send a letter explaining exactly why Ms. Cavallo was requesting each type of information. Mr. Ritz represented that after receiving that letter, he would discuss it with the remaining members of Hotel Finance Partners and then decide if Hotel Finance Partners needed to hire its own counsel. Mr. Ritz otherwise refused to provide the statutorily required information requested on November 20.

15

108.    Counsel responded that if Mr. Ritz would not provide the statutorily required information, Ms. Cavallo would take steps to compel him to do so. Mr. Ritz responded that he "looked forward to receiving" that and terminated the call.

109.    On December 22, 2023, counsel for Ms. Cavallo emailed Mr. Ritz and Mr. Russell the December 4 letter, explaining that despite numerous conversations with Mr. Ritz, Mr. Ritz was refusing to provide the requested information.

110.    Mr. Ritz and Mr. Russell did not respond to counsel's December 22 email.

111.    The December 4 letter that counsel mailed to Hotel Finance Partners was returned to counsel for Ms. Cavallo as "unclaimed" on January 2, 2024.

**Defendants' additional efforts to keep
Ms. Cavallo in the dark regarding the operations of the Hotel**

112.    On March 11, 2015, the corporation allegedly adopted by-laws.

113.    The Board is comprised of three of the four shareholders in the corporation: Mr. Ritz, Mr. Russell, and Mr. Jud.

114.    The alleged by-laws and Tex. Bus. Orgs. Code Ann. § 21.351 require an annual meeting of the shareholders, and it is the obligation of the Board to set the time and provide notice to all shareholders of such meetings.

115.    Pursuant to the alleged by-laws and Tex. Bus. Orgs. Code Ann. § 21.353, shareholders must receive notice of the annual shareholder meeting at least ten (10) days but no more than sixty (60) days prior to the date of the meeting. Notice may be written, printed, or electronic and must provide the place, date, time, and purpose of the meeting.

116.    Ms. Cavallo has not received notice of an annual shareholder meeting from 2019 to date.

117.    Upon information and belief, the Board is either not holding annual shareholder meetings as required by the alleged by-laws and Texas law, or, in the alternative, the Board is not providing notice of annual or other shareholder meetings to Mr. Imperatore's Estate.

118.    Upon information and belief, the Board is not providing notice of shareholder meetings to Mr. Imperatore's Estate to prevent the Estate from being apprised of the conduct and status of the company.

119.    For example, the Board allegedly amended the by-laws on or around July 20, 2022. Mr. Imperatore's Estate did not receive notice about any meeting with the purpose of amending the alleged by-laws, or the Board's adopted amendments to the alleged by-laws.

**Yet another undisclosed mortgage used for Ritz and Russell's personal benefit**

120.    Upon information and belief, at some point after the 22720 Monarch mortgage loan occurred, Defendants Ritz and Russell caused Hotel Finance Partners to take out yet another loan secured by the assets of the corporation.

121.    This loan is in the amount of $150,000.00. As with the Gulf Atlantic and 22720 Monarch mortgages, upon information and belief, the proceeds of this loan were not used for the purposes of Hotel Finance Partners or the Hotel.

122.    Instead, upon information and belief, the proceeds were used to benefit Mr. Ritz and/or Mr. Russell either directly or indirectly through other businesses in which they were involved.

123.    Upon information and belief, the proceeds of this mortgage were not distributed to Hotel Finance Partners but were, instead, distributed to entities owned or controlled by Ritz and/or Russell.

124.    Ms. Cavallo was not informed about this loan.

125.    Upon information and belief, Mr. Ritz and Mr. Russell did not make full disclosure about this loan to the shareholders or any disinterested directors.

126.    Upon information and belief, there was not a shareholder vote regarding this loan.

127.    Upon information and belief, Mr. Ritz and Mr. Russell caused Hotel Finance Partners to take out this loan for their own benefit or the benefit of an entity in which they have a financial interest.

**Ritz and Russell cause Hotel Finance Partners to sell
its assets and misappropriate the proceeds for their own personal use**

128.    On or about June 5, 2023, Ritz and Russell caused Hotel Finance Partners to enter into a Contract to Buy and Sell Real Estate for the sale of the Hotel with an entity called Monarch Mountain Development, LLC.

129.    That June 5, 2023 Contract was part of an agreement between Hotel Finance Partners and Monarch Mountain Development to commence a phased transaction

designed to initiate the sale, transfer and assignment of all or substantially all of the assets of Hotel Finance Partners to Monarch Mountain Development.

130.    On or about September 1, 2023, Ritz and Russell caused Hotel Finance Partners to enter into a First Amendment to the June 5, 2023 Contract and Amendment to Modify for a Phased Transaction. That amendment set forth the agreement by which Monarch Mountain Development would purchase all, or substantially all, of the assets of Hotel Finance Partners. Specifically, it required Monarch Mountain Development to assume the Gulf Atlantic mortgage and the 22720 Monarch Mortgage "in exchange for an undivided 42% … interests in the assets of Hotel Finance Partners, Inc." Second, it provides that Monarch Mountain Development "shall pay the Seller the remaining balance of $2,150,000.00 USD … for the remaining 58.0% … interests in the assets of Hotel Finance Partners[.]" This amendment was signed by Mr. Ritz.[1]

131.    Concurrent with the September 1 amendment, Mr. Ritz executed an Assignment, Bill of Sale and Conveyance that granted Monarch Mountain Development a 42% interest in the assets of Hotel Finance Partners.

132.    Defendants intentionally structured this agreement to exclude Ms. Cavallo from its benefits. Upon information and belief, Defendants advised Monarch Mountain Development of their intent to exclude Ms. Cavallo. In or around August 26, 2023,

---

[1] The September 1, 2023 amendment states that the total purchase price is "$4,800,000.00 USD four million eight hundred thousand dollars" and that Monarch Mountain Development is assuming "$2,650,000.00" in liens. Upon information and belief, the $4.8 million purchase price and the $2.65 million in liens depended on the representation that the holder of the 22720 Monarch mortgage would provide an additional $1 million loan. No such loan was ever made.

Monarch Mountain Development explicitly referenced this scheme, noting that "[w]e may want to make it where I am buying stock from the company so as not to have to include your other partners on that agreement[.]"

133.    Despite the Court ordering Defendants to produce all documents related to any offer or agreement to sell the Hotel, Defendants did not produce the September 1 Amendment, nor did they produce the actual conveyance.

134.    Upon information and belief, Monarch Mountain Development, starting in late 2023, has made a series of payments it believed were being made for the benefit of Hotel Finance Partners. These payments fell into two general categories: (1) debt servicing; and (2) operating expenses. Upon information and belief, Monarch Mountain Development made these payments in amounts and to accounts as directed by Mr. Ritz and/or Mr. Russell. Upon information and belief, the operating expenses payments were demanded by Defendants to cover Monarch Mountain Development's share in the ownership of the assets of Hotel Finance Partners.

135.    Upon information and belief, these payments were misappropriated by Defendants Ritz and/or Russell for their own personal use.

136.    Mr. Ritz and/or Mr. Russell caused Hotel Finance Partners to prepare and file a tax return for 2023 that does not reflect the sale of 42% of the company's assets nor any of the payments made. Upon information and belief, this information was illegally withheld from the tax returns in order to hide Defendants' misappropriation of funds for personal use.

137.    Mr. Ritz and/or Mr. Russell caused Hotel Finance Partners to prepare and file a tax return for 2024 that does not reflect the sale of 42% of the company's assets nor any of the payments made. Upon information and belief, this information was illegally withheld from the tax returns in order to hide Defendants misappropriation of funds for personal use.

138.    Upon information and belief, Hotel Finance Partners has received substantial income (either through the assumption of its debt or payments towards its debt obligations by Monarch Mountain Development) and a substantial reduction in expenses (because Monarch Mountain Development is paying 42% of the expenses). Yet the 2023 and 2024 tax returns do not report any such income or reduction in expenses. Instead, the reported expenses for both 2023 and 2024 are <u>higher</u> than for 2022, even though Hotel Finance Partners is paying only 58% of the expenses.

**Defendants lie to Ms. Cavallo and the Court to hide their misappropriation**

139.    Despite Ms. Cavallo repeatedly demanding inspection of any contract for the sale of the Hotel since November 20, 2023, Defendants have consistently refused to produce any such copies. It is now clear that such a refusal was designed to hide the misappropriation of funds for the personal benefit of Ritz and Russell.

140.    In April 2024, Defendants, through their current counsel, intentionally misled Plaintiff about the existence of any agreement to sell the Hotel. Specifically, Defendants' counsel repeatedly denied the existence of any executed agreement and, falsely, stated that "[w]hen and if a purchase offer is ready to be considered, it will be presented to the shareholders after the statutorily required board actions. At that time, the

relevant Texas statute allows your client to review the offer and cast her 25% vote." However, a purchase agreement had already been executed, and Defendants intentionally misled Plaintiff in an attempt to induce her to drop her claims.

141.    In June 2024, Defendants claimed in a filing to this Court that "[t]here have been no credible offers to purchase the Lodge, including the purported 2022 sale." Doc. 42 at 5. That filing was signed on behalf of Defendants by their current counsel who, upon information and belief, also advises Defendants in their business transactions. When that filing was made, Defendants knew that it was false because they had already executed agreements for the sale of the Hotel. Further, in February 2022 Defendants received a letter of intent to purchase the Hotel from Limon Realty II, which evidences their misrepresentations to Plaintiff and the Court that there were "no credible offers to purchase the Lodge[.]" Upon information and belief, counsel for Defendants knew that the statement was false or did not make a good-faith, reasonable effort to verify its accuracy before making that representation to the Court. That false representation was made in order to hide Defendants' theft of funds.

142.    On August 30, 2024, Ms. Cavallo requested to inspect "[r]ecords of account for Hotel Finance Partners, including the general ledger" and Defendants arranged for an in-person inspection of limited records on September 11, 2024. Yet Defendants did not produce any accounting records showing that, on September 1, 2023, Hotel Finance Partners had sold a 42% undivided interest in the Hotel, nor any records evidencing the approximately $2.65 million Hotel Finance Partners received for that sale or the payments received since that sale.

**Defendants issue a facially invalid capital call
and threaten to punish Plaintiff for failing to comply.**

143.    On September 22, 2025, counsel for Defendants sent to counsel for Plaintiffs a letter dated September 16, 2025 that purported to be a "formal notice" of a "mandatory Capital Call[.]"

144.    The September 22 letter demanded that Plaintiff contribute $258,093 to Hotel Finance Partners "on or before September 30, 2025."

145.    The September 22 letter threatened that "[f]ailure to contribute the called capital" within eight days "will constitute a default under the Bylaws." The letter further threatened that Hotel Finance Partners would charge interest "on the unpaid balance," dilute Plaintiffs "equity interest in the Company" and "forfeit[]" Plaintiff's "shareholder's interest."

146.    However, no provision of the by-laws of Hotel Finance Partners gives the Board Directors the power to demand further capital contributions from shareholders. In fact, no provision of the by-laws even discusses further capital contributions.

147.    Further, the by-laws do not provide for any "default" for failing to make a capital contribution and none of the threatened remedies set forth in the September 22 letter are provided for in the by-laws. Simply put, nothing in the by-laws authorizes the September 22 letter or the threatened actions for failure to comply with an *ultra vires* demand for additional capital.

148.    The letter cites to claimed financial losses for Hotel Finance Partners for the 2023 and 2024 financial years. As detailed above, however, these claimed losses are

false and misleading because they do not reflect the value of the sale of 42% of the assets of the company to a third party nor the cost-saving resulting from that sale.

149.    Instead, upon information and belief, this invalid capital call was issued in a further attempt to hide Defendants' financial malfeasance and misappropriation of company assets.

150.    Upon information and belief, the September 22 letter was issued in a misguided attempt to punish Ms. Cavallo from pursuing her rights as a shareholder.

## FIRST CLAIM FOR RELIEF

### Breach of Fiduciary Duty Against Defendants Ritz and Russell (Pursuant to Tex. Bus. Orgs. Code Ann. § 22.235)

151.    Plaintiff incorporates by reference Paragraphs 1–150.

152.    At all relevant times, Mr. Ritz was a director and the Chief Financial Officer of Hotel Finance Partners Inc.

153.    At all relevant times, Mr. Russell was a director and the President of Hotel Finance Partners Inc.

154.    At all relevant times, Mr. Imperatore was a shareholder of Hotel Finance Partners Inc.

155.    As directors and officers, Mr. Ritz and Mr. Russell owe a fiduciary duty to act in good faith, with ordinary care, and in the best interests of the corporation and its shareholders. *See* Tex. Bus. Orgs. Code Ann. §§ 22.221(b); 22.235(a).

156.    Mr. Ritz breached his fiduciary duty to act in good faith and in the best interests of the corporation by delaying and otherwise interfering with the sale of the Hotel and failing to inform shareholders of potential sales and offers to purchase.

157.    Mr. Russell breached his fiduciary duty to act in good faith and in the best interest of the corporation by failing to act in the sale of the Hotel and failing to inform shareholders of potential sales and offers to purchase.

158.    Both Mr. Ritz and Mr. Russell have further breached their fiduciary duties by causing Hotel Finance Partners to enter into unauthorized and illegal agreements for the personal benefit of Mr. Ritz and Mr. Russell and in misappropriating funds received related to those agreements.

159.    Ms. Cavallo has made several attempts to request information from Mr. Ritz and Mr. Russell regarding the sale of the Hotel.

160.    Ms. Cavallo has also presented Mr. Ritz and Mr. Russell with an offer to purchase the Hotel. Mr. Ritz cancelled Ms. Cavallo's potential sale without explanation.

161.    A demand upon Mr. Ritz and Mr. Russell to take action against themselves for their breach of fiduciary duties would be futile.

162.    As a result of Mr. Ritz and Mr. Russell's breach of fiduciary duties, the shareholders of Hotel Finance Partners Inc. have suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

**Transaction Involving Interested Directors Against Mr. Ritz and Mr. Russell (Tex. Bus. Orgs. Code Ann. § 21.418)**

163.    Plaintiff incorporates by reference Paragraphs 1–162.

164.    A conflicting interest transaction is void or voidable unless the material facts about the director's interest are disclosed to the shareholders and a majority of disinterested shareholders approve the transaction. Tex. Bus. Orgs. Code Ann. § 21.418(b).

165.    Mr. Ritz executed two mortgages on the Hotel on behalf of Hotel Finance Partners for loans in the amount of $1,000,000.00 and $650,000.00. Mr. Ritz and/or Mr. Russell also caused Hotel Finance Partners to take another $150,000.00 loan.

166.    Upon information and belief, Mr. Ritz and Mr. Russell did not use the proceeds of the Gulf Atlantic mortgage, the 22720 Monarch mortgage, or the $150,000 loan for the purposes of Hotel Finance Partners or the Hotel.

167.    Upon information and belief, Mr. Ritz and Mr. Russell caused Hotel Finance Partners to incur these debts for their own benefit or the benefit of an entity in which they have a financial interest.

168.    Upon information and belief, Mr. Ritz and Mr. Russell caused Hotel Finance Partners to sell 42% of its assets to a third-party in exchange for that third-party assuming these invalid debts.

169.    Mr. Ritz and Mr. Russell did not disclose any material facts about these transactions to the shareholders, nor did they fully disclose the facts about these transactions to a disinterested director.

170.    The shareholders did not vote on any of these transactions.

171.    Mr. Ritz and Mr. Russell have not responded to Ms. Cavallo's inquiries about the mortgages.

172.    A demand upon Mr. Ritz and Mr. Russell to take action against themselves regarding the conflicted interest transactions would be futile.

173.    As a result of Mr. Ritz and Mr. Russell's conduct and failure to comply with Tex. Bus. Orgs. Code Ann. § 21.418, Ms. Cavallo has suffered damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### Declaratory Relief

174.    Plaintiff incorporates by reference Paragraphs 1–173.

175.    Mr. Ritz executed two mortgages and took out a third loan using the Hotel as collateral without proper disclosure or majority vote from Hotel Finance Partners shareholders. Mr. Ritz and Mr. Russell caused Hotel Finance Partners to sell 42% of its assets in exchange for a third party assuming that debt.

176.    Pursuant to 28 U.S.C. § 2201(a) and F.R.C.P. 57, Plaintiff is entitled to a declaratory judgment that the Gulf Atlantic mortgage, the 22720 Monarch mortgage, the $150,000 loan, and the sale of 42% of the company's assets are void as a result of Mr. Ritz and Mr. Russell's misconduct and lack of authority.

## FOURTH CLAIM FOR RELIEF

### Failure to Comply with C.R.S. § 7-116-102 and Tex. Bus. Orgs. Code Ann. § 21.218 Against All Defendants

177.    Plaintiff incorporates by reference Paragraphs 1–176.

178.    Mr. Imperatore is a shareholder of Hotel Finance Partners Inc. and has the right to inspect and copy corporate records pursuant to C.R.S. § 7-116-102 and Tex. Bus. Orgs. Code Ann. § 21.218.

179.    Ms. Cavallo, as the Executrix of Mr. Imperatore's Estate, has the same inspection rights as Mr. Imperatore.

180.    Ms. Cavallo has made multiple written demands on Defendants to inspect Hotel Finance Partners' records.

181.    Defendants refused to comply with Ms. Cavallo's demands.

182.    As a result of Defendants' refusal, Ms. Cavallo has no ability to inspect and copy corporate records necessary to properly administer Mr. Imperatore's Estate, including the sale of the Hotel.

183.    Ms. Cavallo has incurred attorneys' fees and costs to enforce these rights.

## FIFTH CLAIM FOR RELIEF

### Civil Theft 6 Tex. Prac. & Rem. Code § 134.003(a) Against Ritz and Russell

184.    Plaintiff incorporates by reference Paragraphs 1–183.

185.    The assets of Hotel Finance Partners, including the Hotel, belong to Hotel Finance Partners.

186.    Mr. Imperatore is a shareholder in Hotel Finance Partners Inc.

187.    Defendants Ritz and Russell have unlawfully appropriated property of Hotel Finance Partners in violation of the theft provision of the Texas Penal Code.

188.    Defendants Ritz and Russell have accomplished that misappropriation by, *inter alia*, using the assets of Hotel Finance Partners to secure loans; using the proceeds of those loans for personal use; selling assets of Hotel Finance Partners to a third party; and redirecting the proceeds of that sale for their own personal use.

189.    This misappropriation was accomplished with fraudulent intent by both Defendants Ritz and Russell.

190.    A demand upon Mr. Ritz and Mr. Russell to take action against themselves regarding their theft would be futile.

191.    As a result of Mr. Ritz and Mr. Russell's conduct, Ms. Cavallo has suffered damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
**Defalcation/Willful Neglect of Fiduciary Duties Against Defendants Ritz and Russell**

192.    Plaintiff incorporates by reference Paragraphs 1–191.

193.    At all relevant times, Mr. Ritz was a director and the Chief Financial Officer of Hotel Finance Partners Inc.

194.    At all relevant times, Mr. Russell was a director and the President of Hotel Finance Partners Inc.

195.    At all relevant times, Mr. Imperatore was a shareholder of Hotel Finance Partners Inc.

196.    As directors and officers, Mr. Ritz and Mr. Russell owe a fiduciary duty to act in good faith, with ordinary care, and in the best interests of the corporation and its shareholders. *See* Tex. Bus. Orgs. Code Ann. §§ 22.221(b), 22.235(a).

197.    Defendants Ritz and Russell have both willfully neglected those duties by, *inter alia*, misappropriating assets of Hotel Finance Partners for their own personal benefit and engaging in self-dealing.

198.    A demand upon Mr. Ritz and Mr. Russell to take action against themselves regarding willful neglect of their fiduciary duties would be futile.

199.    As a result of Mr. Ritz and Mr. Russell's conduct, Ms. Cavallo has suffered damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### Declaratory Relief

200.    Plaintiff incorporates by reference Paragraphs 1–199.

201.    Defendants sent the September 22 letter demanding Plaintiff contribute additional capital within eight days or face the possibility of forfeiting Plaintiff's 25% interest in the company, among other threats.

202.    Nothing in the by-laws permit the capital call or the threatened penalties for failing to comply with the capital call.

203.    Pursuant to 28 U.S.C. § 2201(a) and F.R.C.P. 57, Plaintiff is entitled to a declaratory judgment that the September 22 letter is invalid, that she has no obligation to contribute any additional capital, and that Defendants may not take any of the threatened actions set forth in the September 22 letter.

204.    Plaintiff is further entitled to a declaration that because the bylaws do not contemplate any additional capital contributions by any shareholder, any additional "capital contributions" from other shareholders are invalid and cannot be used to justify any change in Plaintiff's ownership percentage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Teresa Cavallo is entitled to and seeks the following relief:

(A)    damages in an amount to be proven at trial;

(B)    an order pursuant to C.R.S. § 7-116-104 and Tex. Bus. Orgs. Code Ann. § 21.218 allowing Ms. Cavallo the immediate right to inspect and copy Hotel Finance Partners Inc.'s records, at the expense of Hotel Finance Partners;

(C)    declarations pursuant to 28 U.S.C. § 2201(a) and F.R.C.P. 57 regarding the invalid transactions and capital call;

(D)    attorneys' fees and costs pursuant to C.R.S. § 7-116-103 and Tex. Bus. Orgs. Code Ann. § 21.222 associated with Ms. Cavallo's efforts to enforce her rights under C.R.S. § 7-116-102 and Tex. Bus. Orgs. Code Ann. § 21.218;

(E)    attorneys' fees and costs under any applicable statute or rule;

(F)    costs; and

(G)    any and all other relief the Court deems just and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues so triable.

Dated in Denver, Colorado this 23rd day of December, 2025.

Respectfully submitted,

*s/ John M. McHugh*

John M. McHugh, #45456
**Fennemore Craig P.C.**
1700 Lincoln Street, Suite 2400
Denver, Colorado 80203
jmchugh@fennemorelaw.com
Telephone: (303) 291-3200

William Thomas
*Attorney-in-charge*
Tex. Bar No. 24083965
S.D. Tex. Fed. ID No. 2137893
Ryan Goodland
Tex. Bar No. 24087604
S.D. Tex. Fed. ID No. 3609239
**McDowell Hetherington LLP**
1001 Fannin St
Houston, Texas 77002
william.thomas@mhllp.com
ryan.goodland@mhllp.com
Telephone: (713) 333-5888

*Attorneys for Teresa Cavallo, Executrix for the Estate of Richard Imperatore*

Plaintiff's address:
1 Bridge Plaza North, Suite 730
Fort Lee, New Jersey 07024

# EXHIBIT 2

| | |
|---|---|
| **From:** | Dr. Gavin Clarkson, Esq. <drgavin@clarkson.llc> |
| **Sent:** | Tuesday, April 2, 2024 10:42 PM |
| **To:** | McHugh, John |
| **Cc:** | 'william.thomas@mhllp.com'; 'mnordberg@fennemorelaw.com' |
| **Subject:** | RE: Unsigned mortgages and other matters |

Mr. McHugh,

I've pasted and *italicized* the core elements of your most recent email, responding to each in turn.

*We have reviewed the relevant Texas statutes and all of our requests to inspect have complied with those terms.*
What statutes were reviewed? Did your Texas colleagues do that review? I ask because, once again, your request greatly exceeds the scope of what HFP is required to allow shareholders to inspect, and your client's purported reason for inspection is demonstrably pretextual.

*HFP, however, continues to refuse to properly respond and despite your representations below, has never afforded our client an opportunity to inspect the records requested.*
That assertion is demonstrably false. HFP is under no obligation to email you anything. And your client has yet to propose dates for an inspection trip. Instead, you filed an arguably frivolous lawsuit in Colorado based on the false notion that Colorado corporate governance statutes apply to a Texas corporation, and you repeatedly trumpet *Jefferson Industrial Bank* as controlling despite it being entirely inapposite.

Furthermore, HFP categorically denies that Ms. Cavallo has been denied the opportunity "to examine and copy, at a reasonable time at the corporation's principal place of business or other location approved by the corporation and the holder, the corporation's books, records of account, minutes, share transfer records, and other records, whether in written or other tangible form, if the record is reasonably related to and appropriate to examine and copy for [a previously stated] proper purpose."

*I would suggest they stop playing games and provide the requested information.*
HFP is not required to provide anything other than an opportunity for Ms. Cavallo to inspect certain books and records, and only after a proper (i.e., not demonstrably pretextual) purpose has been given. From my perspective, the only person playing games here is you, Mr.McHugh, particularly your version of "bait and switch" regarding our discussion of standing down until March 31 (which is now moot and not worth further mention).

*The continued obstructionist conduct and refusal to comply is entirely inconsistent with any request to resolve this matter. We have repeatedly asked for information and have been repeatedly stonewalled.*
The Texas statutes do not require that we send you anything, yet that is what you have repeatedly demanded. There has been no stonewalling, just an unwillingness to go beyond what the statute requires. Failure to placate your misplaced feelings about what you are entitled to does not equal obstructionist conduct on the part of HFP.

*We are always happy to discuss settlement, but so far we have received no offer and no showing any good faith to resolve this dispute.*
Every email we sent, but didn't have to, was a gesture of good faith. You, however, have utterly failed to reciprocate with a single gesture of good faith. Furthermore, you have indicated nothing in the way of an interest in settling, much less anything resembling "happy." Instead, you have made it clear that you will run up as large a fee as possible.

Here is our offer. Dismiss the case. Each party pays its own costs. We will, of course, always comply with our statutory obligations regarding inspection of books and records, but under Texas law, not Colorado law. Your client can propose a mutually agreeable time to inspect books and records once she provides a proper, non-pretextual, purpose.

<mark>When and if a purchase offer is ready to be considered, it will be presented to the shareholders after the statutorily required board actions.</mark> At that time, the relevant Texas statute allows your client to review the offer and cast her 25% vote.

*The ball is in your client's court.*

1

You have our offer.
*Otherwise, we intend to file a respond to your remarkably meritless motion to dismiss.*
If you are uninterested in settling and dismissing, I look forward to reading your "respond [sic]" while drafting my client's answer and counterclaim.
Or we could pursue a different path. Based on my conversations with him, Mr. Thomas seems eminently reasonable and knowledgeable about the relevant Texas statutes. Perhaps you might consider deferring to his expertise in this matter. I would anticipate a much quicker resolution should you choose to do so.
Cordially,

--
Dr. Gavin Clarkson, Esq.
State of Texas Bar No. 24067335
**Clarkson PLLC**
1773 Westborough Drive, Suite 927
Katy, TX 77449

**From:** McHugh, John
**Sent:** Friday, March 29, 2024 3:05 PM
**To:** Dr. Gavin Clarkson, Esq.
**Cc:** William Thomas ; Nordberg, Mallory
**Subject:** RE: Unsigned mortgages and other matters
Dr. Clarkson,
Please copy all counsel on communications. I continue to be and have always been lead counsel on this matter. Mr. Thomas' entry of appearance did not change that.
We have reviewed the relevant Texas statutes and all of our requests to inspect have complied with those terms. HFP, however, continues to refuse to properly respond and despite your representations below, has never afforded our client an opportunity to inspect the records requested.
Right now, requests for a "quick settlement and dismissal" based on the current conduct of HFP is specious. If your clients are genuinely interested in resolving this matter, I would suggest they stop playing games and provide the requested information. The continued obstructionist conduct and refusal to comply is entirely inconsistent with any request to resolve this matter. We have repeatedly asked for information and have been repeatedly stonewalled. If your clients want a resolution, they should start acting like it. We are always happy to discuss settlement, but so far we have received no offer and no showing any good faith to resolve this dispute.
The ball is in your client's court. Otherwise, we intend to file a respond to your remarkably meritless motion to dismiss.
John

John M. McHugh, he/him, Director
T: 303.764.3722 | F: 303.291.3201
jmchugh@fennemorelaw.com

**From:** Dr. Gavin Clarkson, Esq. <drgavin@clarkson.llc>
**Sent:** Friday, March 29, 2024 1:25 PM
**To:** McHugh, John <JMcHugh@fennemorelaw.com>
**Cc:** William Thomas <william.thomas@mhllp.com>; Nordberg, Mallory <mnordberg@fennemorelaw.com>
**Subject:** RE: Unsigned mortgages and other matters
Dear Mr. Thomas, Mr. McHugh, and Ms. Nordberg,
First, a blessed Good Friday to y'all.
Please let me know who is the official point of contact for Ms. Cavallo. Mr. Thomas is listed as the attorney in charge on the most recent notices of appearance. The demand email came from Ms. Nordberg to my email, however, while the physical letter was mailed to my office (not HFP's office) from Mr. Thomas' firm.
To date, the company itself has yet to receive a proper request to inspect books and records, but in the interest of comity, I am overlooking that technicality.

As for the mortgages, I told Mr. Thomas that all HFP has are the unsigned execution copies, which I forwarded as a courtesy. The signed originals were overnighted after signature, and I'm not sure scans or copies were made. As a courtesy, I have requested copies of the signed versions, but I do not have those as of yet.

Please note that any emailing of documents has been done as a courtesy, as the relevant Texas statutes do not require copies of books and records to be emailed. Please do not mistake such courtesies as in any way agreeing that Mr. McHugh's demands are appropriate in either form or scope under Texas law.

Mr. McHugh's claim that I am "again refusing to provide the requested documents and comply with your statutory obligations" is nonsense, and his statement that we have failed to comply with his March 21, 2024, demand is demonstrably false. Prior to the deadline expressed in the March 21 letter, I informed Mr. Thomas, both verbally and in writing, that Ms. Cavallo remains free to exercise her right to inspect the books and records that the statute entitles her to inspect.

As I also informed Mr. Thomas, the March 21 request clearly exceeds the scope TBOC § 21.218, so Mr. McHugh's claim that my response fails to justify the refusal to provide documents outside the scope of what TBOC § 21.218 requires is equally without merit. The March 28 demand is similarly excessive in its scope. Perhaps the Colorado lawyers might consider a review of the relevant Texas statutes (including Title 1 of the TBOC) before making further *ultra vires* demands. Or better yet, let the Texas lawyers handle the questions of what is required under Texas law. While Ms. Cavallo's purported justification continues to be pretextual, given that her stated rationale for needing to inspect books and records for tax return purposes is entirely inconsistent with the position her Colorado attorneys are maintaining in the complaint, we have nonetheless emailed certain documents in a spirit of comity. In return, we are constantly met with hostility, mischaracterizations of conversations, and frivolous litigation based on statutes that either do not apply to my client or which are cited disingenuously (or perhaps merely incompletely).

As I told Mr. Thomas, while I would relish the chance to debate the applicability of Mr. McHugh's oft-cited case (*Jefferson Industrial Bank v. First Golden*) on the applicability of Colorado corporate governance statutes on a Texas corporation, it is not in the financial interest of the company for litigation to continue, particularly given that it will distract from finalizing a sales contract that can be presented to the shareholders for approval. Thus, I believe a quick settlement and dismissal is in the best interest of all parties.

Have a blessed day,

--

Dr. Gavin Clarkson, Esq.
State of Texas Bar No. 24067335
**Clarkson PLLC**
1773 Westborough Drive, Suite 927
Katy, TX 77449

---

**From:** McHugh, John <JMcHugh@fennemorelaw.com>
**Sent:** Thursday, March 28, 2024 4:31 PM
**To:** Dr. Gavin Clarkson, Esq. <drgavin@clarkson.llc>
**Cc:** William Thomas <william.thomas@mhllp.com>; Nordberg, Mallory <mnordberg@fennemorelaw.com>
**Subject:** RE: Unsigned mortgages and other matters

Dr. Clarkson,

We are in receipt of the Promissory Note 22720 Monarch, 22720 Monarch Guaranty, Amendment No. 2 Promissory Note, Amendment No. 2 to Amended and Restated Loan Agreement, and Amendment No. 2 to Deed of Trust. Thank you for sending those. We have not, however, received any signed copies.

To date, Hotel Finance Partners still has not complied with our March 21, 2024 Written Demand to Examine and Copy Corporate Records. Our Demand requested to inspect the records no later than March 27, 2024. We have received copies of the mortgages and nothing more.

The Demand's request was broader than just copies of the mortgages. Specifically, we requested all documents related to the mortgages, including "any documentation about the **use of funds**, **any payoff of either mortgage**, and **any corporate action** taken regarding the mortgages including but not limited to a director or shareholder vote regarding the execution of the mortgages or the use of funds." Your Motion to Dismiss represents that Michael Jud authorized both transactions related to the mortgages. We have not seen any documents relating to that board meeting, including minutes or a vote, to date.

Your response also fails to provide any justification for the refusal to provide the current contract for the sale of the Hotel, and any drafts or amendments acts. We have been requesting these documents since November 2023. Both Mr. Ritz and yourself repeatedly represented you would provide them. And yet we have never received a copy, and instead received the below response that you are again refusing to provide the requested documents and comply with your statutory obligations. This pattern of promising to provide certain documents, only to delay the production of those documents, and ultimately refuse to provide anything is what lead to this litigation in the first place. After Mr. Ritz repeatedly promised and refused to provide corporate records, he informed me that he was looking forward to litigation. And here we are.

While we are not opposed to discussing settlement, the recent production of corporate records is not the type of transparency that would be beneficial to those discussions. Hotel Finance Partners has repeatedly represented that it will provide certain documents and records. We have never received them or receive incomplete disclosures. As such, I am attaching our fourth request to inspect the corporate records of Hotel Finance Partners, including all documents that we initially requested to examine and copy on November 20, 2023 and December 4, 2023.

John

John M. McHugh, he/him
Director



1700 Lincoln St, Suite 2400, Denver, CO 80203
T: 303.764.3722 | F: 303.291.3201
jmchugh@fennemorelaw.com | View Bio

**CONFIDENTIALITY NOTICE:** The information contained in this message may be protected by the attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please immediately reply to the sender that you have received the message in error. Then delete it. Thank you.

**From:** Dr. Gavin Clarkson, Esq. <drgavin@clarkson.llc>
**Sent:** Tuesday, March 26, 2024 7:13 PM
**To:** William Thomas <william.thomas@mhllp.com>
**Subject:** Unsigned mortgages and other matters

Mr. Thomas,

It is amazing how refreshing cordial communication can be. Our interaction reminds me of what it was like to drive Texas highways back when "Drive Friendly, the Texas Way" actually meant something (as opposed to my drive to work this morning, which was about as enjoyable as the typical phone call with McHugh).

Here are the two sets of mortgage documents. The signed versions were overnighted, and I'm not sure that the former (emphasis on "former") paralegal scanned them before sending them. I've asked the client to request the signed copies and will forward them when they arrive.

I am hoping that this gesture of transparency will go a long way towards settling the lawsuit. As we discussed on the phone, there has never been a real offer to sell the hotel (if your client disputes that, then have her track down the purported earnest money that was supposedly deposited by her buyer as it is owed to the defendant).

Your client is always welcome to visit our office to examine additional books and records, but any offer to sell the hotel will have to be voted on by the shareholders after consideration by the board. At that point, and only at that point, will your client be entitled to review the proposed contract document.

We are hoping to have such a contract shortly, but your client's misguided frolic in the Colorado court scared away some of the capital that was supposed to be part of the offer, and the manager of the investor group is scrambling to replace that capital.

Separately, I did receive the written demand for inspection of books and records, and as we discussed, my understanding is that this email is a sufficient response for now. If I am mistaken, please let me know.

As for the motions I filed yesterday, while I would relish the chance to debate the applicability of Mr. McHugh's apparently favorite case (*Jefferson Industrial Bank v. First Golden*) on the applicability of Colorado corporate governance statutes on a Texas corporation, it is not in the financial interest of the company for litigation to continue.

If you have a path to quick settlement and dismissal, I'm interested in your thoughts.

Thanks again,

--

Dr. Gavin Clarkson, Esq.
State of Texas Bar No. 24067335
**Clarkson PLLC**
1773 Westborough Drive, Suite 927
Katy, TX 77449